## NOT FOR PUBLICATION

FILED
JAMES J. WALDRON, CLERK
APR 14 2015
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____DEPUTY

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: Louis Frank Avolio, Debtor | Case No.: 13-11282-ABA<br><br>Honorable Andrew B. Altenburg, Jr. |
| FRT 2011-1 Trust, Plaintiff<br><br>v.<br><br>Louis Avolio, Defendant | Adv. Pro. No.: 13-1479-ABA |
| FRT 2011-1 Trust, Plaintiff<br><br>v.<br><br>Gibraltar Financial Services, Defendant | Adv. Pro. No.: 13-1933-ABA<br><br>jointly consolidated |

### MEMORANDUM OPINION IN SUPPORT OF DENIAL OF MOTION FOR RECONSIDERATION

I.    INTRODUCTION

Before the court is the motion, Document No. 43 on the Court's Docket, of plaintiff FRT 2011-1 Trust ("FRT") to reconsider the court's January 14, 2015 order denying FRT's motion for summary judgment, Document No. 36 on the Court's Docket, in Adversary Pro. No 13-1933-ABA. The order also denied defendant Gibraltar Financial Services' cross motion for summary judgment. Gibraltar Financial Service ("Gibraltar") and Debtor Louis Avolio[1] both objected to FRT's motion. The parties filed written submissions and the court conducted oral argument on the matter after which it took the matter under advisement. For the reasons set forth below, FRT's motion for reconsideration is denied as issues of material fact remain warranting a denial of the motion for reconsideration.

---

[1] By an order dated December 16, 2013, this adversary proceeding and *FRT 2011-1 Trust v. Avolio*, Adv. Pro. No. 13-1479, were consolidated. Thus, Mr. Avolio has standing to object to the summary judgment motion filed in this proceeding.

*In re FRT 2011-1 Trust v. Gibraltar Financial Services*
Case No.: 13-11282-ABA
Adv. No.: 13-1933-ABA
*Memorandum Opinion In Support Of Denial Of Motion For Reconsideration*
Page | 2

## II. JURISDICTION AND VENUE

The court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. The matter is before the court pursuant to Fed. R. Bankr. P. 7001(2) and (8). Pursuant to Fed. R. Bankr. P. 7052, the court issues the following findings of fact and conclusions of law.

## III. FINDINGS OF FACT[2]

In its letter opinion in support of its January 14th order, Document No. 35 on the Court's Docket (the "Letter"), the court held that genuine issues of material facts precluded summary judgment. It specified that there were issues of fact regarding the creation of the satisfaction, including its timing; the authorization of the creation of the satisfaction; how Quality Title obtained the satisfaction; the validity of the "no merger" documents; and whether consideration was given in the Eltek transaction. Letter, pp. 2-3.

FRT argues that the court erred in finding genuine issues of material fact. It states that the authenticity of the satisfaction and how Quality Title obtained the satisfaction are not material facts in dispute. FRT Brief, pp. 5-6. First, it posits that Gibraltar only contested the satisfaction to the extent that it was not authorized by Marilyn Van Soest. *Id.*, p. 7. Then it states that lack of authority is a legal question, not a factual one. *Id.*, p. 9. Second, it argues that there was no allegation that Quality Title created the satisfaction itself. *Id.* Finally, it states that if the court ruled that William Reed authorized the satisfaction, then it does not matter how Quality Title obtained it. *Id.*, pp. 9-10.

In addition, FRT complains that the court failed to rule on its equitable subordination count. *Id.*, p. 10. It notes that Gibraltar did not dispute that FRT made advances of taxes and insurance. *Id.*

Gibraltar objects to FRT's motion in a letter filed February 13, 2015, Document No. 46 on the Court's Docket ("Gibraltar Letter"). It argues that there is an issue of whether the satisfaction is legally binding because of the inconsistent dates and credibility of Asset Protection Group's ("APG") notary. Gibraltar Letter, p. 2. It argues that Castle Point failed to perform adequate due diligence, therefore it was negligent and accordingly should bear the consequence. *Id.*, p. 3. It continues to argue that there is a fact issue regarding the satisfaction because Gibraltar alleges that Ms. Van Soest never authorized it, there is no evidence regarding how Quality Title obtained it, there are date discrepancies, it is not known whether it was

---

[2] As I write only for the parties, I will not repeat the facts that are familiar to all of them.

*In re FRT 2011-1 Trust v. Gibraltar Financial Services*
Case No.: 13-11282-ABA
Adv. No.: 13-1933-ABA
***Memorandum Opinion In Support Of Denial Of Motion For Reconsideration***
Page | 3

---

intended to be recorded, and it is not clear why Castle Point and Quality Title relied on it. *Id.*, p. 4. As for equitable subordination, it argues that there is no proof of inequitable conduct by Gibraltar to support this count. *Id.* Finally, it states that it did allege in its cross motion that Castle Point, Quality Title, or Mr. Avolio may have created the satisfaction. *Id.*, p. 3.

Mr. Avolio objects to the motion by a letter filed February 9, 2015, Document No. 45 on the Court's Docket ("Avolio Letter"). He disputes Mr. Reed's authority to issue the satisfaction, that Mr. Reed even signed it, and that he, Mr. Avolio, ever paid off the note. Avolio Letter, p. 2. He argues that an owner of a mortgage can recall a wrongly-issued satisfaction. *Id.*, p. 3. Moreover, he states that Castle Point should have asked for verification of the satisfaction from the former secured party. *Id.*, p. 4. He points out that Quality Title could not have received the satisfaction in the time frame alleged, and posits that, instead, the satisfaction was created in 2008 "according to two of their own witnesses." *Id.*, p. 5. He argues that even if the satisfaction was issued in error or forged, Gibraltar could still have a first priority lien. *Id.*, p. 5. Finally, he states that regarding the taxes and insurance paid by FRT, nobody ever asked it to pay these, that it "volunteered" to do so from second lien position. *Id.*, p. 5.

Mr. Avolio's last argument, made twice orally[3] and in his objection to the motion to reconsider on the docket of *FRT v. Avolio*, Adv. Pro. No. 13-1479-ABA, (Document No. 69 on the Court's Docket in Adv. Pro. No. 13-1479-ABA) ("Avolio Objection"), is that FRT conceded in state court that Gibraltar had a prior mortgage. He argues that principles of collateral estoppel, judicial estoppel, *res judicata*, claim preclusion, and quasi estoppel prevent FRT from now arguing that Gibraltar does not have a valid first mortgage. In support, he quotes a transcript from January 14, 2011 where FRT's counsel[4] stated that "there will be an announcement [at the sheriff's sale] that there was a prior lien, correct." Avolio Objection, p. 6. Mr. Avolio also attaches a December 6, 2010 letter from Judge William C. Todd, III of the Superior Court of New Jersey, Atlantic County to the attorneys in the foreclosure case advising them that he wanted them to address at an upcoming hearing the lien status—whether Gibraltar was in first position, second position, or the mortgage had been satisfied or was invalid. *Id.*, Exhibit A. Mr. Avolio points out that Judge Todd stated that FRT's failure to join Gibraltar in the matter "might be deemed a concession that Gibraltar's mortgage is in fact prior to that of plaintiff." *Id.* Mr. Avolio also attaches a sheriff sale listing of the foreclosure action, with no prior liens disclosed. *Id.*, Exhibit B.

---

[3] Mr. Avolio orally made this argument to this court, both on December 18, 2014 - the return date for the original motions for summary judgment, and on March 3, 2015 – the return date for the motion to reconsider.

[4] The mortgage in this proceeding has gone through many owners. For the ease of the court, "FRT" shall refer to whatever entity held the mortgage at the time in question. The same counsel appears to have represented the mortgage holder throughout.

*In re FRT 2011-1 Trust v. Gibraltar Financial Services*
*Case No.: 13-11282-ABA*
*Adv. No.: 13-1933-ABA*
***Memorandum Opinion In Support Of Denial Of Motion For Reconsideration***
Page | 4

### A. Was the Issue Decided in the State Court?

Mr. Avolio's last argument will be addressed first even though it does not address FRT's asserted grounds for reconsideration. Nevertheless, the court wishes to digress to address it, as Mr. Avolio has repeatedly raised this contention while the court has explained to him why it does not decide the case. With the following explanation, the court expects the argument will not be presented to the court again.[5]

First, the letter from which Mr. Avolio quotes is not a final order determining rights, but a letter asking the parties to address the issue of the validity and priority of the Gibraltar lien in their respective responses to Mr. Avolio's motion to vacate FRT's judgment of foreclosure. In the end, Judge Todd did not hold that FRT conceded to being in second position. Moreover, his statement was only that FRT's actions might be *construed* as so conceding. Finally, he sets out three alternatives regarding the relative lien status of the Gibraltar and FRT liens: that Gibraltar is first and FRT second; that FRT is first and Gibraltar is second; or that Gibraltar's mortgage is either satisfied or is invalid. Judge Todd's conjecture that FRT's failure to join Gibraltar in the foreclosure complaint meant it conceded to being in second position fails to consider the state court's third suggested scenario: that FRT did not join it because it believes that the mortgage was satisfied or invalid. Accordingly, this "evidence" presented by Mr. Avolio does not contradict FRT's position in this court.

Second, while the issue was raised at the state court hearing on the motion to vacate the foreclosure judgment, Judge Todd did not resolve the lien priority but ruled only on whether there was cause to vacate FRT's foreclosure judgment. This is evident many times from the transcript of that hearing. For example, Judge Todd states:

> There is, as I understand it from the perspective of the plaintiff in this case, a question as to whether Gibraltar has a first mortgage or a second mortgage or no mortgage at all, and that's an issue which, as I understand it, is not going to be resolved as a part of the proceeding before me, at least not at this point.

---

[5] Gibraltar also asserted this, in its counter-statement of material facts filed with its cross-motion for summary judgment, at page 7:

> 8. Plaintiff's attorneys have, on at least one occasion, acknowledged Gibraltar's priority. See Certification of Louis Avolio at Exhibits F-1 through G-2.
> 9. Despite their acknowledgments and statements to the New Jersey State judge, Plaintiffs attempted to have the subject property listed for Sheriff Sale without disclosing Gibraltar's lien interest. See Atlantic County Sheriff's Office Listing attached hereto as Exhibit "1", specifically noting "NONE" under Priors.

*In re FRT 2011-1 Trust v. Gibraltar Financial Services*
*Case No.: 13-11282-ABA*
*Adv. No.: 13-1933-ABA*
***Memorandum Opinion In Support Of Denial Of Motion For Reconsideration***
Page | 5

---

Document No. 45-9[6] on the Court's Docket in the main bankruptcy case, Bankr. No. 13-11282-ABA.

Judge Todd then states regarding the issue of whether FRT's procedure implicitly conceded a lien position "That's a completely – that's an issue that's completely independent of the question of whether the judgment that was entered should be vacated at the request of the defendant." *Id.*

Next, Judge Todd indicates that he understands FRT's position as being that its sheriff sale would be subject, not to Gibraltar's lien, but to Gibraltar's claim that it holds a first lien. "THE COURT: Oh, okay, so if I bought the property, I might buy my way into some litigation with Gibraltar, but I shouldn't be worried about – I shouldn't be worried in the end because even if I lost that litigation, that title insurance company would cover me." *Id.*, pp. 40-41.

Nevertheless, Mr. Avolio has attempted to rely on Judge Todd's letter and the transcript as a basis for estopping FRT's argument that Gibraltar does not have a first lien. He has continued to do this despite having the import of the Judge Todd letter, the full transcript and more importantly, the benefit of Judge Wizmur making it clear to him at a hearing held almost two years ago in his main bankruptcy case, Bankr. Case No. 13-11282, on August 20, 2013. At that hearing, the following colloquy with Judge Wizmur ensued:

> 18 MR. AVOLIO: Can I show you something that's very
> 19 important?
> 20 THE COURT: Can you tell me what it is?
> 21 MR. AVOLIO: Yes. It's a letter from Judge Todd.
> 22 THE COURT: Yes, I saw the letter.
> 23 MR. AVOLIO: And he was going to discuss that.
> 24 THE COURT: And he did discuss it, and I did read
> 25 the transcript. You can be assured that I understand what the
>
> 1 – how the mortgage company went forward. I read it. I
> 2 understand it.
> 3 I don't discount the fact that this is how they
> 4 agreed that they would go forward as a substitute for starting
> 5 again to notice Gibralter in that suit. That doesn't

---

[6] This court takes judicial notice of this transcript filed in the main bankruptcy case pursuant to *In re Indian Palms Associates, Ltd.*, 61 F.3d 197, 204 (3d Cir. 1995) and *In re Aughenbaugh*, 125 F.2d 887, 889 (3d Cir. 1942). *See Jacobs v. Bayha*, No. CIV.A. 07-237, 2011 WL 1044638, at *6 (W.D. Pa. Mar. 18, 2011) (taking judicial notice of transcripts of hearings filed in the case). In addition, the court by letter dated March 4, 2015 asked that the parties file any objection to incorporating this transcript into the summary judgment record and none were filed.

*In re FRT 2011-1 Trust v. Gibraltar Financial Services*
*Case No.: 13-11282-ABA*
*Adv. No.: 13-1933-ABA*
**Memorandum Opinion In Support Of Denial Of Motion For Reconsideration**
Page | 6

---

> 6 necessarily mean that they are now estopped from contending
> 7 that the Gibralter position is invalid. I don't think they
> 8 are.
> 9 I think that's what they agreed to do, to take that
> 10 position in order to go forward with the sheriff sale, and
> 11 obviously they changed their mind about going forward with the
> 12 sheriff sale, which is not –
> 13 MR. AVOLIO: For two years.
> 14 MR. NICHOLAS: And quite frankly, Your Honor –
> 15 MR. AVOLIO: Two and a half years.
> 16 THE COURT: They're not estopped from going forward.

Document No. 25-4 on the Court's Docket in the jointly administered Adversary Proceeding, No. 13-1479-ABA, pp. 19 and 20 of 39. [7]

> Judge Wizmur explained again:
>
> 25 THE COURT: As I read Judge Todd's decision, he
>
> 1 decided if you want to take the mortgage behind Gibralter and
> 2 resolve it with Gibralter to say my judgment, the judgment
> 3 that I'm giving you doesn't take away Gibralter as the first
> 4 position.
> 5 That doesn't mean that the mortgage company who took
> 6 behind Gibralter can't challenge Gibralter and its position
> 7 subsequently, in a Court of law, including this one. It means
> 8 that that [foreclosure] judgment did not resolve the position of Gibralter.
> 9 And if that issue is unresolved, then it needs to be
> 10 resolved.
> 11 And I would suggest that there is concurrent
> 12 jurisdiction, State Court and Bankruptcy Court, on that issue.
> 13 So if that issue needs to be resolved here – and because it's
> 14 very much connected to how that mortgage was incurred, what
> 15 its status is, what the story is, what the challenges are,
> 16 those are intertwined with the non-dischargeability cause that
> 17 the second mortgagee at this point is asserting.
> 18 And so it seems to be most appropriate to resolve

---

[7] This court takes judicial notice of the documents filed in the jointly consolidated Adversary Proceeding pursuant to *In re Indian Palms Associates, Ltd.*, 61 F.3d 197, 204 (3d Cir. 1995) and *In re Aughenbaugh*, 125 F.2d 887, 889 (3d Cir. 1942). *See Jacobs v. Bayha*, No. CIV.A. 07-237, 2011 WL 1044638, at *6 (W.D. Pa. Mar. 18, 2011) (taking judicial notice of transcripts of hearings filed in the case).

*In re FRT 2011-1 Trust v. Gibraltar Financial Services*
*Case No.: 13-11282-ABA*
*Adv. No.: 13-1933-ABA*
**Memorandum Opinion In Support Of Denial Of Motion For Reconsideration**
Page | 7

---

> 19 all of those things in one package. If the mortgage is valid,
> 20 Gibralter, if you're paying in the normal course, you're
> 21 entitled to your Chapter 13 plan that crams down that second
> 22 mortgage fully, that allows you to pay off your condo fees and
> 23 your taxes and be done with it.
> 24 So you have the chance to assert that defense, and
> 25 to say Gibralter is the proper first priority first mortgage.

*Id.*, pp. 22 and 23 of 39.

All in all, not only did Mr. Avolio originally misconstrue Judge Todd's letter and decision, he has continued to raise the issue despite having the position clearly explained to him by Judge Wizmur in the main bankruptcy case during the August 20, 2013 hearing. I have read the transcript of January 14, 2011 hearing and I agree with and adopt Judge Wizmur's interpretation of Judge Todd's decision. The issue has not been decided and accordingly, FRT's motion for reconsideration will not be denied on the basis of Mr. Avolio's objection filed in Adv. Pro. No. 13-1479.

### B. The Motion For Reconsideration

Turning now to FRT's motion for reconsideration, the court notes that it was filed a week after the court's order denying FRT's motion for summary judgment and Gibraltar's cross-motion for summary judgment, thus Federal Rule of Civil Procedure 59, incorporated into bankruptcy cases by Federal Rule of Bankruptcy Procedure 9023, applies. Regarding Rule 59, the Third Circuit has stated:

> The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence. Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.

*Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

FRT appears to proceed under the third basis. It is well established that "[i]t is not appropriate to use a motion for reconsideration as a vehicle to rehash the arguments that the Court considered in reaching its decision." *Saddle River Valley Bank v. Garsia*, No. 09-02255, 2010 WL 276190, at *2 (Bankr. D.N.J. Jan. 14, 2010) (citations omitted); *In re Rusch*, No. 09-44799, 2010 WL 5394789, at *2 (Bankr. D.N.J. Dec. 28, 2010) (same); *In re Armstrong Store*

*In re FRT 2011-1 Trust v. Gibraltar Financial Services*
*Case No.: 13-11282-ABA*
*Adv. No.: 13-1933-ABA*
***Memorandum Opinion In Support Of Denial Of Motion For Reconsideration***
Page | 8

---

*Fixtures Corp.*, 139 B.R. 347, 349 (Bankr. W.D. Pa. 1992) (stating "a motion to reconsider may *not* be used to *rehash* the same arguments presented the first time or simply to express the opinion that the court was wrong") (emphasis in the original) (citing *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986)). In fact, courts have stated that "[t]he standard for granting a motion to reconsider is strict in order to preclude repetitive arguments that have already been fully considered by the court." *Armstrong Store Fixtures*, 139 B.R. at 349 (citing *Park South Tenants Corp. v. 200 Central Park South Associates*, 754 F. Supp. 352, 354 (S.D.N.Y. 1991)).

In addition, courts have found that a clear error of law or fact "requires an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *In re Titus*, 479 B.R. 362, 368 (Bankr. W.D. Pa. 2012) (internal citations omitted) (citing *In re Oak Park Calabasas Condominium Ass'n*, 302 B.R. 682, 683 (Bankr. C.D. Cal. 2003) (quoting *Black's Law Dictionary* (7th Ed. 1999))). The *Titus* court continued:

> Other courts have expressed much the same view, though in somewhat different words. *See, e.g., In re Telfair*, 745 F. Supp. 2d 536, 561 (D.N.J. 2010) (the term manifest injustice is an overlap of the term manifest error of law or fact, and it means that the court overlooked some dispositive factual or legal matter that was presented to it, or alternatively that there was an error in the trial court that was direct, obvious, and observable); *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601 (7th Cir. 2000), rehearing denied, cert. denied as *Beverley v. Oto*, 531 U.S. 1152, 121 S. Ct. 1097, 148 L. Ed. 2d 970 (2001) (manifest error is not demonstrated by disappointment of losing party, rather it is the wholesale disregard, misapplication, or failure to recognize controlling precedent); *In re Parikh*, 397 B.R. 518 (Bankr. E.D.N.Y. 2008) (same).

*Id.*

The *Titus* court also looked to the Third Circuit's standard of appellate review to inform the standard that it should apply when determining whether a clear error of fact has been made under Rule 59(e). It stated:

> A finding of fact is clearly erroneous when, after reviewing the evidence, the court of appeals is left with a definite and firm conviction that a mistake has been committed. Thus, even if we might have come to different factual conclusions based on this record, we defer to the findings of the district court unless we are convinced that the record cannot support those findings.

*In re FRT 2011-1 Trust v. Gibraltar Financial Services*
*Case No.: 13-11282-ABA*
*Adv. No.: 13-1933-ABA*
***Memorandum Opinion In Support Of Denial Of Motion For Reconsideration***
Page | 9

---

*Id.* at 371 (internal citations omitted) (stating that "[w]hile recognizing that a *Rule 59(e)* review is not the same as an appellate review, given the circumstances presented, the Court nevertheless finds some guidance in the standard that [a Third Circuit] appellate court would apply in deciding whether a lower court has made a clear error of fact") (emphasis in the original).

In determining that the presence of a clear error was not established on a motion for reconsideration, a New Jersey District Court stated "Plaintiffs fail to explain how the Court's decision not to give dispositive treatment to certain facts constitutes a clear error or creates a manifest injustice." *DeLalla v. Hanover Ins.*, No. 09-2340, 2010 WL 3908597, at *3 (D.N.J. Sept. 30, 2010) (finding that the plaintiffs simply "repeat[ed], *ad nauseum,* several factual assertions from their initial opposition to the CWO Defendants' motion to transfer, which they believe the Court overlooked in the first instance").

Lastly, "a court's obligation to view the evidence in the light most favorable to a non-movant does not require the court to take into account evidence that will not be admissible at the trial." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 296-97 (3d Cir. 2014), *cert. denied sub nom. Allston v. Lower Merion Sch. Dist.* (U.S. Apr. 6, 2015). ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). "[O]nly evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." *Disability Rights New Jersey, Inc. v. Velez*, 974 F. Supp. 2d 705, 719 (D.N.J. 2013), citing *Countryside Oil Co., Inc. v. Travelers Ins. Co.*, 928 F. Supp. 474, 482 (D.N.J. 1995).

FRT first asserts that Gibraltar does not dispute that the satisfaction of mortgage (1) was prepared by APG; (2) was created by Ms. Edwards, executed by Mr. Reed, and notarized by Ms. Edwards; and (3) that the business records of APG substantiate that APG prepared the satisfaction of mortgage. Motion for Reconsideration, p. 6. It concludes that the court should accept that the satisfaction was valid.

FRT in support quotes Gibraltar's response to FRT's statement of material facts. Those admissions are that Mr. Reed was hired to incorporate Gibraltar, and that APG's business records reflect that APG created the Gibraltar mortgage that was executed by Mr. Avolio on March 10, 2005. Gibraltar Memorandum of Law (#28), pp. 3-4. As to whether APG prepared the satisfaction of mortgage, via Ms. Edwards, and whether Ms. Edwards confirmed that she was the person at APG that prepared the satisfaction and witnessed the signature of Mr. Reed, Gibraltar denied the statements to the extent that they allege that Gibraltar ever authorized the creation of the satisfaction. *Id.* So FRT is correct that Gibraltar only disputes the authority to create the satisfaction and no longer disputes the fact of the satisfaction itself.

But that does not resolve the validity of the satisfaction, since Mr. Avolio's certification (included in Gibraltar's response to summary judgment and its cross-motion for summary

*In re FRT 2011-1 Trust v. Gibraltar Financial Services*
*Case No.: 13-11282-ABA*
*Adv. No.: 13-1933-ABA*
***Memorandum Opinion In Support Of Denial Of Motion For Reconsideration***
Page | 10

---

judgment) disputes it. He states he never paid off the loan, and that no satisfaction was produced at the closing. More than a mere denial, he presented evidence supporting that the mortgage was never satisfied, including copies of the quit claim deed from Mr. Avolio to Gibraltar and a deed transferring the property back, a transaction that would not take place had the mortgage been satisfied. The documents, which were recorded, were not only submitted by Gibraltar, *see* Cross Motion for Summary Judgment, ex. E to cert. of Ms. Van Soest, but were attached to the certification of Adam C. Pakes, one of FRT's witnesses, without any allegation of their invalidity. *See* Motion for Summary Judgment, exs. E and F to cert. of Adam C. Pakes. In addition, Mr. Avolio submitted a pre-closing letter from Castle Point acknowledging its second lien position. *See* Gibraltar Cross Motion for Summary Judgment, ex. B to Avolio certification. These were not refuted by FRT.

FRT had argued that because the satisfaction was "lawfully executed" in accordance with New Jersey law, that it is self-authenticating. *See* FRT Letter in Opposition to Gibraltar's Cross Motion, 11/12/2014, pp. 5-6. Federal Rule of Evidence 901 addresses the authentication of evidence.[8] Rule 901 states that "to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." *Id.* The burden of proof for authentication is "slight." *U.S. v. Mebrtatu*, 543 Fed. Appx. 137, 140 (3d Cir. 2013); *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 928 (3d Cir. 1985). "All that is required is a foundation from which the fact-finder could legitimately infer that the evidence is what the proponent claims it to be." *McQueeney*, 779 F.2d at 928 (citations omitted). The standard for authentication does not require that no questions remain about the reliability of the evidence. *Id.* (citing *U.S. v. Goichman*, 547 F.2d 778, 784 (3d Cir. 1976) ("Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court.")).

Rule 901's lax authentication requirement can be satisfied in many ways. Fed. R. Evid. 901(b). Relevant here, evidence can be authenticated by "Distinctive Characteristics and the Like," referring to the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances," or by "Testimony of a Witness with Knowledge," which is defined as "testimony that an item is what it is claimed to be." Fed. R. Evid. 901 (b)(1), (4).

The court questions the credibility of FRT's authenticating witness, Ms. Edwards, who certified that she prepared the Gibraltar mortgage months after it was recorded. Though she stated that she created documents such as the mortgage and satisfaction, she did not recall creating these specific documents for Gibraltar. In addition, Ms. Edwards's certification indicates that the original satisfaction of mortgage was mailed to "our client," which can only mean

---

[8] Federal Rule of Bankruptcy Procedure 9017 provides that the Federal Rules of Evidence apply in bankruptcy proceedings.

*In re FRT 2011-1 Trust v. Gibraltar Financial Services*
Case No.: 13-11282-ABA
Adv. No.: 13-1933-ABA
***Memorandum Opinion In Support Of Denial Of Motion For Reconsideration***
Page | 11

---

Gibraltar, while Mr. Jordan's certification states that Mr. Avolio provided Quality Title with the satisfaction of mortgage.

Meanwhile, FRT's other authenticating witness, Mr. Jordan, certified both that he received the satisfaction from Mr. Avolio (a fact that Mr. Avoilio vehemently denies), and that he did not receive it until June 23, 2008. While the latter may have been a typo in Mr. Jordan's certification (the closing occurred June 30, 2006), FRT did not so argue at oral argument on its motion, despite Mr. Avolio having pointed out the odd date in his certification. These discrepancies lead the court to dismiss the testimony of the authenticating witnesses, at least at this summary judgment stage.

FRT alternatively argues that the satisfaction is self-authenticating because it was notarized in conformity with New Jersey law, citing New Jersey Statutes Annotated 46:14-2.1 and 46:14-6.1 and Federal Rule of Evidence Rule 902(8). *See* FRT Letter in Opposition to Gibraltar's Cross Motion, 11/12/2014, pp. 5-6. Certain evidence is self-authenticating. Fed. R. Evid. 902. Rule 902(8) includes an "acknowledged document" as self-authenticating when it is a "document accompanied by a certificate of acknowledgment that is lawfully executed by a notary public or another officer who is authorized to take acknowledgments." Fed. R. Evid. 902(8).

This would suffice if the satisfaction produced were the original. Rule 1002, known as the Best Evidence Rule, provides that "[a]n *original* writing, recording, or photograph is required in order to prove *its content* unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002 (emphasis added). Rule 1002 applies when a document is entered into evidence to prove the truth or validity of its content. *Warden v. PHH Mortg. Corp.*, 799 F. Supp. 2d 635, 642 (N.D.W.V. 2011). "The Rule exists to afford guarantees against inaccuracies and fraud by requiring that *the original* of the document be offered, subject to exceptions in Rule 1003 (allowing the use of duplicates) and Rule 1004 (providing exceptions to the requirement of an original)." *Id.* (citation omitted) (emphasis in the original).

Federal Rule of Evidence 1003 states that a "duplicate is admissible to the same extent as the original *unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate.*" Fed. R. Evid. 1003 (emphasis added). Since the authenticity of the satisfaction is at issue here, the copy of the satisfaction cannot be admitted as self-authenticating under Rule 902(8) due to Rule 1003. *In re DeShazo*, 354 B.R. 720, 725 (Bankr. E.D. Pa. 2006) ("Although the Deed as offered contains a notary's acknowledgment, it is only a copy, and not an original. This matters given rule 1003's disallowance of a duplicate in lieu of an original document where authenticity is at issue. See F.R.E. 1003(1). Therefore, the copy of the deed would not be self-authenticating under rule 902(8).").

*In re FRT 2011-1 Trust v. Gibraltar Financial Services*
Case No.: 13-11282-ABA
Adv. No.: 13-1933-ABA
***Memorandum Opinion In Support Of Denial Of Motion For Reconsideration***
Page | 12

---

Federal Rule of Evidence 1004, another exception to the requirement of an original, provides:

> An original is not required and other evidence of the content of a writing, recording, or photograph is admissible if:
>
> (a) all the originals are lost or destroyed, and not by the proponent acting in bad faith;
>
> (b) an original cannot be obtained by any available judicial process;
>
> (c) the party against whom the original would be offered had control of the original; was at that time put on notice, by pleadings or otherwise, that the original would be a subject of proof at the trial or hearing; and fails to produce it at the trial or hearing; or
>
> (d) the writing, recording, or photograph is not closely related to a controlling issue.

As FRT did not produce an original—therefore the satisfaction is not self-authenticating—and did not plead any of the exceptions to the requirement of an original, the court cannot accept the authenticity of the satisfaction on summary judgment. Consequently, FRT's motion for reconsideration will not be granted on the ground that the court erred in not considering the satisfaction valid.

FRT next requests that the court reconsider its denial of summary judgment in light of the fact that there was no allegation that Quality Title created the satisfaction; if the court ruled that Mr. Reed had the authority to issue the satisfaction, then it does not matter how Quality Title obtained it. Motion for Reconsideration, pp. 9-10. The court cannot reach the authority issue when there is a genuine issue of material fact regarding the authenticity of the satisfaction.

Finally, FRT complains that the court failed to rule on its equitable subordination/subrogation count. Though FRT is correct that the court did not address the equitable subordination count in its opinion letter, it too suffers from genuine issues of material fact. FRT relies on a theory that Gibraltar acted inequitably resulting in an injury to it. *See* Motion for Summary Judgment, p. 19 (setting forth standard). It alleges that Gibraltar and Mr. Avolio conspired to avoid creditors. *Id.*, p. 20. It claims that it relied on the issuance of the satisfaction for causing it to execute the loan with Mr. Avolio and to later pay taxes and insurance on the property in the belief that it was protecting its first lien position. Hence the cause of action depends on a finding that the satisfaction is valid and summary judgment on this count was rightly denied.

In addition, while the court notes that FRT used the terms "subordination" and "subrogation" interchangeably, in its summary judgment motion FRT ultimately applied the

*In re FRT 2011-1 Trust v. Gibraltar Financial Services*
Case No.: 13-11282-ABA
Adv. No.: 13-1933-ABA
***Memorandum Opinion In Support Of Denial Of Motion For Reconsideration***
Page | 13

---

standard stated in *In re Paolella*, 161 B.R. 107 (E.D. Pa. 1993) for subordination under Section 510(c) of the Bankruptcy Code. That Section provides that the court may "under principles of equitable subordination, subordinate for the purposes of distribution all or part of an allowed claim to all or part of another allowed claim. . . ." 11 U.S.C. § 510(c)(1). However, Gibraltar did not file a claim in Mr. Avolio's bankruptcy case, so there is no allowed claim to subordinate to the allowed claims of the other creditors.

In putting forth "subrogation" as a count in its complaint, the court presumes that FRT meant "to compel the ultimate discharge of an obligation by the one who should in good conscience pay it." *Mortgage Elec. Registration Sys., Inc. v. Massimo*, No. F-5394-05, 2006 WL 1477125, at *3 (N.J. Super. Ct. App. Div. May 26, 2006). But whether Gibraltar should reimburse FRT for taxes and insurance the latter paid in reliance on the satisfaction again depends on a factual finding that Gibraltar's mortgage is valid and that the satisfaction is invalid. The court determined that it could do neither without a trial. Therefore, it did not rule on that count. However, the court will enter an order on reconsideration denying FRT's motion for summary judgment on that count.

In conclusion, FRT has not shown that the court made a clear error of fact or of law in its denial of FRT's motion for summary judgment, accordingly, with the one exception just noted, the court should deny the motion for reconsideration.

## IV.   CONCLUSION

Based on the foregoing, FRT's motion to reconsider the January 14th order as to the court's failure to rule on FRT's equitable subordination/subrogation count is **GRANTED**, and having considered the submissions of the parties, the January 14th order is amended to add that FRT's motion for summary judgment on its equitable subordination/subrogation count is denied. FRT's other grounds for reconsideration are denied.

A separate order shall be entered.


Dated: April 14, 2015                    /s/ Andrew B. Altenburg, Jr., Judge
                                         United States Bankruptcy Court
                                         For the District of New Jersey